Milton Springut, Esq. (MS6571)
Tal S. Benschar, Esq. (TSB0838)
KALOW & SPRINGUT LLP
488 Madison Avenue
New York, New York 10022
Tel: (212) 813-1600
Fax: (212) 813-9600

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
VAN CLEEF & ARPELS LOGISTICS, S.A. and :
VAN CLEEF & ARPELS, INC,                :          Civil Action
                                        :
            Plaintiffs,                 :          No. 08 CV 7073
                                        :
v.                                      :
                                        :
JERI COHEN JEWELRY, INC.;               :
and JOHN DOES 1-10,                     :
                                        :
            Defendants.                 :
-----------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
A PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................... iii

PRELIMINARY STATEMENT ................................................. 1

BACKGROUND AND STATEMENT OF FACTS .................................. 2

    A.    Corporate History Of VCA ........................................ 2

    B.    SLEPRA's Creation Of The Vintage Alhambra In 1968 ................ 3

    C.    Transfer And Assignment Of Rights ................................ 4

    D.    The Unique Elements Of The Vintage Alhambra
          Jewelry Design .................................................. 4

    E.    The Vintage Alhambra Design Has Been A Great
          Commercial Success And Has Been Widely Promoted By VCA ...... 5

    F.    Defendants' Infringement ......................................... 5

ARGUMENT ............................................................... 6

POINT I

THE COURT SHOULD ISSUE A
PRELIMINARY INJUNCTION BARRING
FURTHER SALES OF INFRINGING GOODS ................................ 6

    A.    Requirements For A Preliminary Injunction ......................... 6

    B.    Irreparable Harm ................................................ 7

    C.    VCA Is Likely To Succeed On Its Copyright Infringement Claims ...... 8

          1.    Ownership And Validity ..................................... 8

          2.    Infringement ............................................... 10

                  a.    Actual Copying ..................................... 10

                  b.    The Copying Is Illegal ................................ 11

POINT II

THE COURT SHOULD GRANT VCA
EXPEDITED DISCOVERY ............................................... 11

CONCLUSION .......................................................... 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ayyash v. Bank Al-Madina*,
233 F.R.D. 325 (S.D.N.Y. 2005) .................................................. 12

*Caravan, Ltd. v. Stevens*,
2001 U.S. Dist. LEXIS 18613 (S.D.N.Y. 2001) ............................. 9

*Clonus Associates v. Dreamworks,
LLC*, 417 F. Supp. 2d 248 (S.D.N.Y. 2005) ........................... 6, 7, 10

*Conn. Department of Environmental Protection v. OSHA*,
356 F.3d 226 (2d Cir. 2004) ........................................................ 6

*Dan-Dee Imports, Inc. v. Well-Made Toy Manufacturing Corp.*,
524 F. Supp. 615 (E.D.N.Y. 1981) .............................................. 10

*Feist Pub'lns, Inc. v. Rural Telegraph Service Co.*,
499 U.S. 340 (1991) .................................................................... 8

*Hamil America, Inc. v. GFI, Division of Goldtex, Inc.*,
193 F.3d 92 (2d Cir. 1999) ..................................................... 10, 11

*Itar Russian NewsAgency v. Russian Kurier, Inc.*,
153 F.3d 82 (2d Cir. 1998) ........................................................... 9

*Kieselstein-Cord v. Accessories by Pearl, Inc.*,
632 F.2d 989 (2d Cir. 1980) ........................................................ 8

*Notaro v. Koch*, 95 F.R.D.
403 (S.D.N.Y. 1982) ................................................................... 12

*Publications Intern., Ltd. v. Landoll, Inc.*,
164 F.3d 337 (7th Cir. 1998),
*cert. denied*, 526 U.S. 1088 (1999) ............................................. 1

*Twentieth Century Fox Film Corp. v. Mow Trading Corp.*,
749 F. Supp. 473 (S.D.N.Y. 1990) ............................................... 11

*Wali v. Coughlin*,
54 F.2d 1015 (2d Cir. 1985) ......................................................... 7

*Yurman Design, Inc. v. Paj, Inc.*,
262 F.3d 101 (2d Cir. 2001) .................................................... 8, 10

## FEDERAL STATUTES & RULES

17 U.S.C. § 102 ........................................................... 8

Fed.R.Civ.P 30(a)(2)(A)(iii) ............................................... 11

Fed.R.Civ.P 34(b) ........................................................ 11

180278.1

Plaintiffs Van Cleef & Arpels, S.A. and Van Cleef & Arpels, Inc. (collectively "VCA") hereby move for a preliminary injunction and expedited discovery to prevent the continued infringement of their copyright.

## PRELIMINARY STATEMENT




VCA Vintage Alhambra Earring        Defendants' Earring

"In intellectual property cases, a picture, or, better, the very object claimed to infringe, is worth a thousand words of brief." *Publications Intern., Ltd. v. Landoll, Inc.*, 164 F.3d 337, 343 (7th Cir. 1998), *cert. denied*, 526 U.S. 1088 (1999).

Defendant Jeri Cohen Jewelry, Inc. ("Defendant" or "Jeri Cohen") sells virtually identical copies of VCA's famous Vintage Alhambra Jewelry. It does so openly and brazenly – for example, telling VCA's investigator that a sample item was "a replica of a Van Cleef [item]."

Plaintiffs now seek a preliminary injunction to put an immediate stop to Defendant's piratical acts of copyright infringement and also seek expedited discovery to identify the other actors involved in the piracy.

## BACKGROUND AND STATEMENT OF FACTS

**A.    Corporate History Of VCA**

Van Cleef & Arpels has its origins with the marriage of Estelle Arpels to Alfred Van Cleef in 1896. For over 100 years, the family owned business has been famous throughout the world for its design and sale of fine jewelry pieces. (Luchsinger 3)[1]

Originally "Van Cleef & Arpels" consisted of several companies, all owned by the Arpels family. Prior to 2000, the flagship Van Cleef & Arpels company was Van Cleef & Arpels, S.A. (France), and based in Paris. The company was headed by the brothers Jacques and Pierre Arpels. Another company, a wholly owned subsidiary named SLEPRA (Arpels backwards or Société de Lapidaires et Professionnels de la Recherche Artistique), functioned as the VCA design house, creating new models which would then be marketed by Van Cleef & Arpels, S.A. through its stores and boutiques. During this period of time there was another separate VCA company, located in New York, Van Cleef & Arpels, Inc. The company had no formal corporate relationship with Van Cleef & Arpels, S.A., but was headed by another brother, Claude Arpels. Van Cleef & Arpels, Inc. operated a boutique on Fifth Avenue where it manufactured some jewelry and imported other jewelry from Van Cleef & Arpels, S.A. (Gilbert-Zinck 3-6)

VCA was acquired by the Richemont Group in 1999 and SLEPRA was merged into Van Cleef & Arpels, S.A. Thereafter Van Cleef & Arpels Holding France (then named Florence International, S.A.) took over all assets of Van Cleef & Arpels, S.A. Van Cleef & Arpels

---

[1] Declarations will be referenced by the declarant's surname followed by the cited paragraph numbers, *i.e.*, "Luchsinger 3" references the Luchsinger Declaration, ¶ 3.

The declarations of Frederic Gilbert-Zinck, Prof. Nicolas Binctin and Nicholas Luchsinger were filed in prior cases. They are attached to the Benschar Declaration as Exhibits A, B and E.

2

Holding France remains an active company today. However, all of its intellectual property assets were later transferred to plaintiff Van Cleef & Arpels Logistics, S.A., a Swiss company, whose name was recently changed to Van Cleef & Arpels, S.A. (and is a Plaintiff here). Plaintiff Van Cleef & Arpels, Inc. as well as Van Cleef & Arpels Holding France, are also corporate affiliates of Van Cleef & Arpels, S.A. (Switzerland), and all are part of the Richemont Group. (Gilbert-Zinck 7-8)

### B.   SLEPRA's Creation Of The Vintage Alhambra In 1968

Micheline Roussier is a French national (Roussier 9:7-8)[2] who in 1968 was the Chief Designer at VCA and employed by SLEPRA. (*Id.* 19:24-25, 57:15-24, 58:9-15) She reported to Pierre and Jacques Arpels. (*Id.* 22:19-22) In 1968, VCA desired to launch a more accessible line of jewelry (dubbed "boutique jewelry") and Ms. Roussier, working together with several of her assistants and with the head of an outside manufacturing workshop named Mr. Wildenstein together created the Vintage Alhambra Jewelry Design. There was a great deal of back and forth work between the design team and Mr. Wildenstein, with "many different changes" along the way. (*Id.* 26:15-20, 27:17 to 28:12, 29:9 to 30:18, 31:10-15, 32:11 to 33:12, 35:4-19, 55:3-21) Eventually three final models were produced which were approved by Pierre Arpels. (*Id.* 45:18-22) These three individual models were immediately placed on sale in the VCA boutique in Paris; additional quantities were ordered for the France boutiques and subsequently for the U.S. boutique. (*Id.* 46:5 to 47:9, 138:7 to 140:6) (*See, also,* Binctin Expert Report, Exh. B, Schedule 2, attaching statement of M. Roussier that she affirmed at her deposition, Roussier 140:9 to 141:10)

---

[2] The deposition transcript of Micheline Roussier (from a prior action) is referenced as "Roussier." The cited pages are attached as Benschar Declaration Exhibit C.

3

C.  **Transfer And Assignment Of Rights**

At the time the Vintage Alhambra Jewelry Design was created in 1968, it was the general practice that U.S. copyrights in designs created by SLEPRA were assigned to Van Cleef & Arpels, Inc. in New York, so that the American company would be able to enforce VCA's U.S. rights. (Gilbert-Zinck 10-11)

This practice of transferring U.S. rights to the U.S. company was done orally; no writings to this effect were even undertaken, apart from the copyright applications filed in the name of Van Cleef & Arpels, Inc. To confirm the assignment from SLEPRA to Van Cleef & Arpels, Inc., on or about November 5, 2007, the President of Van Cleef & Arpels Holding France, Stanislas de Quercize, signed an Assignment and Deed of Confirmation. (Gilbert-Zinck 10-12 and Exh. A)

D.  **The Unique Elements Of The Vintage Alhambra Jewelry Design**

The Vintage Alhambra Jewelry Design is a combination of several artistic elements:

- a quatrefoil-shaped charm or pendant. The quatrefoil shape is not identical to the four-leaf clover found in nature. (Roussier 86:20-23, 87:16-20).
- an outer metal border which has fine, half-spherical beading (Roussier 36:3-4, 41:6-16);
- larger beads or "studs" at each of the four corners of the quatrefoil (Roussier 41:21-23);
- in-laid material – which may include semi-precious stones such as mother-of-pearl, onyx, coral, lapis lazuli, turquoise, *etc.*, which are ground to fit the border.

The Vintage Alhambra Jewelry Design uses consistent stone colors for all quatrefoil charms in a given piece. (Roussier 38:12-16, 85:13-14)

- on necklaces and bracelets, the quatrefoil pendants are laid out evenly along a chain, with a particular spacing (about 3 to 4 times the width of the quatrefoil charm). While the chain itself is not especially creative, the placement along the chain is, creating a "pretty balance" along the piece. (Roussier 106:25 to 107:22)

(*See* Sample Vintage Alhambra Jewelry Item, submitted as Luchsinger Exh. B)

### E. The Vintage Alhambra Design Has Been A Great Commercial Success And Has Been Widely Promoted By VCA

The Vintage Alhambra has been sold since 1968. Since 2001, VCA has sold in excess of 25,000 units. The design is also widely advertised and promoted through catalogs, media advertisements, celebrity tie-ins and on the VCA website. (Luchsinger 9-18)

### F. Defendants' Infringement

Defendant operates a jewelry store on Third Avenue in Manhattan. On June 19, 2008, an investigator visited Defendant's store where he noticed several Alhambra design copies for sale. A saleswoman touted one of the items (a bracelet) as a ""replica of a Van Cleef" although she quickly added "I'm not supposed to say that." She stated further that while the bracelet cost $3,600, the equivalent Van Cleef bracelet would cost $14,000, and added that no one could tell the difference between her replica and the real thing. (Scanlon 4)

The salespersons repeatedly referred to the items as belonging to Defendant's "Van Cleef Collection." During a later visit, on July 3, 2008, the sales personnel invited the investigator to view the items in a back room, commenting, "we don't like to bring certain jewelry out front."

5

(Scanlon 5-7)

The investigator eventually purchased a pair of earrings from the "Van Cleef Collection" for $750 plus tax. (Scanlon 8-11 and Exhs. A and B)

On July 7, 2008, VCA sent a cease-and-desist letter to Defendant demanding it cease its infringement and provide information as to its source(s) for the infringing items and the extent of its infringement. This correspondence continued for three weeks through July 30, 2008, when the parties reached an impasse. (Benschar 9) This suit followed.

## ARGUMENT

## POINT I

## THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION BARRING FURTHER SALES OF INFRINGING GOODS

VCA seeks a preliminary injunction to bar further infringement of its copyright[3] in the Vintage Alhambra Jewelry Design.

### A.   Requirements For A Preliminary Injunction

A preliminary injunction is warranted upon a showing of: (1) irreparable harm; and (2) either (a) that the requesting party is likely to succeed on the merits; or (b) sufficiently serious questions relating to the merits of the claim to make them fairly litigatable, with a balance of the hardships tipping in the requesting party's favor. *E.g., Conn. Dept. of Environmental Protection v. OSHA*, 356 F.3d 226, 230 (2d Cir. 2004); *Clonus Assocs. v. Dreamworks, LLC*, 417 F.Supp.2d

---

[3] The Complaint also alleges trade dress infringement under the Lanham Act and the common law. Those claims are not a basis for the instant motion.

248, 250 (S.D.N.Y. 2005) (Scheindlin, J.) "A movant seeking to avail himself of the first alternative need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt." *Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985).

**B.    Irreparable Harm**

In a copyright infringement case, proof of likelihood of success on the merits raises a presumption or irreparable harm. *See Clonus Assocs.*, 417 F.Supp.2d at 250. Furthermore, where the infringement involves the copying of a consumer product that is likely to create marketplace confusion and diverted sales, then such harms are irreparable:

> In most copyright cases, such "marketplace confusion" is presumed to create harm for a copyright holder. Judge Henry Friendly outlined the reasons for this inference in a case about the copying of an camera. Marketplace confusion between two cameras, he explained, can erode the plaintiff's profit whenever customers purchase the copy instead of the original, and these damages can be difficult to quantify after the fact. Confusion between products can also "cause purchasers to refrain from buying either product and to turn to those of other competitors. . . . Furthermore, if an infringer's product is of poor quality . . . a more lasting but not readily measurable injury may be inflicted on the plaintiff's reputation in the market."

*Id.* at 256 (citations omitted). That situation is present here: Defendant touts its items as "replica[s]" of Van Cleef items, brags that no one can tell the difference between its replica and the real item, and compares its high price to VCA's. (Scanlon 4)

7

C.      **VCA Is Likely To Succeed On Its Copyright Infringement Claims**

To prevail on a claim of copyright infringement, a plaintiff must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pub'lns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

1.      **Ownership And Validity**

The Court's analysis is greatly aided by the fact that this issue has already been reviewed by this Court in another action, wherein the Court determined, on summary judgment, that VCA is the owner of a valid copyright in the Vintage Alhambra Design as a matter of law. (Benschar Exh. D, attaching opinion from *Van Cleef & Arpels, Logistics, S.A. v. Landau Jewelers*, No. 07-CV-564 (SAS)(RLE), Op. at 20).

"Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . Works of authorship include . . . sculptural works." 17 U.S.C. § 102. Copyright protection extends to, *inter alia*, jewelry. *Kieselstein-Cord v. Accessories by Pearl, Inc.*, 632 F.2d 989, 993 n. 5 (2d Cir. 1980). *See Yurman Design, Inc. v. Paj, Inc.*, 262 F.3d 101, 108-110 (2d Cir. 2001) (affirming judgment of copyright infringement in jewelry designs.)

The requisite level of creativity for copyright is very low:

> Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works) and that it possesses at least some minimal degree of creativity . . . [T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, "no matter how crude, humble or obvious" it might be.

*Feist Publications v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citation omitted). *See Yurman*, 262 F.3d at 109. Furthermore, "[c]opyright law may protect a combination of elements that are unoriginal in themselves." *Yurman*, 262 F.3d at 109.

8

The Vintage Alhambra Jewelry Design easily meets the test of originality. It is an original combination of several elements – the quatrefoil design, metal border, fine beading, larger corner beads, in-laid semi-precious stones and spacing of quatrefoil charms along the chain.

Copyright ownership is determined by the law of the country with the most significant relationship to the property and the parties. *Itar Russian NewsAgency v. Russian Kurier, Inc.*, 153 F.3d 82, 89-92 (2d Cir. 1998). The Vintage Alhambra Jewelry Design was created in France for a French company, SLEPRA, by French nationals working for that company as well as for an independent workshop. (Roussier 9:7-8, 142:17 to 143:9) Accordingly, French law applies. *Cf. Itar Russian NewsAgency,* 153 F.3d at 89-92 (ownership of works created in Russia by Russian nationals subject to Russian law). As set forth in Professor Binctin's Declaration and Expert Report (Benschar Exhibit B) under French law the Vintage Alhambra Jewelry Design is categorized as a "collective work," with ownership vesting initially in SLEPRA, the company that commissioned the work.

At the time, the parties' arrangement was that all U.S. rights in copyrighted works would be transferred to plaintiff Van Cleef & Arpels, Inc. (Gilbert-Zinck 10-12). That arrangement was later confirmed, in a writing, by SLEPRA's successor, affirming the conveyance of all rights in the work to plaintiff Van Cleef & Arpels, Inc. (*Id.* 12 and Exh. A). "[A]lthough the language of section 204(a) [of the Copyright Act] is clear that there must be a writing in order to transfer copyright ownership, the Second Circuit has held that the writing requirement is 'satisfied by the copyright owner's later execution of a writing which confirms the agreement.'" *Caravan, Ltd. v. Stevens,* 2001 U.S. Dist. LEXIS 18613, *2 (S.D.N.Y. 2001) *(citing Eden Toys v. Florelee*

9

*Undergarment Co.,* 697 F.2d 27, 36 (2d Cir. 1982)) *See Dan-Dee Imports, Inc. v. Well-Made Toy Mfg. Corp.,* 524 F. Supp. 615, 618-19 (E.D.N.Y. 1981).

In short, as this Court has already found, VCA is the owner of a valid copyright in the Vintage Alhambra Jewelry Design. (Benschar Exh. D at 20).

### 2. Infringement

To establish infringement, the copyright owner must demonstrate that "(1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Yurman,* 262 F.3d at 110.

#### a. Actual Copying

"The first part of this test addresses whether the defendant actually copied the work. Actual copying may be shown by direct or indirect evidence; indirect evidence of copying includes proof that the defendants had access to the copyrighted work and similarities that are probative of copying between the works." *Hamil America, Inc. v. GFI, div. of Goldtex, Inc.,* 193 F.3d 92, 99 (2d Cir. 1999). "Access to a copyrighted work may be inferred from the fact that a work was widely disseminated at the time of copying." *Clonus Assocs.,* 417 F.Supp.2d at 251.

The Vintage Alhambra has for years been widely promoted and disseminated throughout the United States and the world. (Luchsinger 9-18 and Exh. A) The exemplary item acquired from Defendant copies virtually every feature of the Vintage Alhambra Design. (*Compare* Scanlon Exh. A with Luchsinger Exh. B) And, Defendant itself promoted its infringing items as "a replica of Van Cleef." (Scanlon 4) The inference of actual copying could not be stronger.

10

### b.     The Copying Is Illegal

> The second part of the test for infringement addresses whether a substantial similarity exists between the two works to be compared. *See* [citation omitted] In most cases, the test for substantial similarity is the "ordinary observer test," which queries whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work. [citations omitted] In the words of Judge Learned Hand, the ordinary observer test is whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960).

*Hamil Am.*, 193 F.2d at 100.

Here, again, a simple comparison of the exemplary item acquired from Defendant with the genuine article indicates that virtually every aspect has been copied. The aesthetic appeal of the two is the same.

## POINT II

## THE COURT SHOULD GRANT VCA EXPEDITED DISCOVERY

VCA also seeks expedited discovery (see Order to Show Cause, Schedule A) which would allow it to identify and pursue Defendant's source(s) for the infringing items.

Rule 30(a)(2)(A)(iii), Fed. R. Civ. P., empowers the court to allow for depositions to be taken before the time specified in Rule 26(d); Rule 34(b) provides that a court may require a defendant to produce documents pursuant to a Rule 34 request in less time than is specified therein. *See, generally, Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990).

Courts have adopted different standards for determining whether to grant such a motion. Recent cases have adopted a flexible "good cause" standard, which simply examines the requested discovery in light of the entire record to determine whether the moving party has set

11

forth a reasonable basis for ordering expedited discovery. *See Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005). Older cases had required satisfaction of a four-part test similar to that for a preliminary injunction. *See Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982), the first court in this Circuit to apply the following four-part test:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Id.*, 95 F.R.D. at 405.

VCA easily meets both tests. VCA has set forth above a convincing case for a preliminary injunction against Defendant; it needs expedited discovery so that it can pursue and put a halt to infringement by others in the supply chain.

## CONCLUSION

For the foregoing reasons, the Court should grant VCA's motions for a temporary restraining order, a preliminary injunction and for expedited discovery in the form submitted.

Respectfully submitted,

KALOW & SPRINGUT LLP

*Attorneys for Plaintiffs*
*Van Cleef & Arpels Logistics, S.A. and*
*Van Cleef & Arpels, Inc.*

Dated: August 12, 2008                By: _____
                                         Milton Springut (MS6571)
                                         Tal S. Benschar (TSB0838)